CASE No. 931.

### KLINCK v. BLACK.

1. The act of a deputy sheriff in putting a purchaser into possession after an order of injunction restraining such act was served upon the sheriff, but before such service was known, or could possibly have been made known to the deputy, is invalid.
2. Upon the application of one claiming a tract of land by title and possession, who was not a party to a cause under which a decree of sale was rendered, a Circuit judge, by his order at chambers, enjoined the sheriff from putting a purchaser of such land into possession, as required by the decree of sale. *Held*, that such order was within the judicial discretion of the Circuit judge, and its legality could not be questioned by the sheriff.
3. Such an order is not suspended by an appeal therefrom.
4. Such order having been violated by the sheriff, through the act of his deputy ignorantly done, it was competent for the Circuit judge, by a second order, to command the sheriff to restore the possession thus changed by the wrongful act of his deputy.

---

Before ALDRICH, J., Colleton, January, 1880.

Q

The tract of land, whose possession is the subject of dispute in this case, was sold by the sheriff of Colleton county, Robert Black, on sale-day, in January, 1ᵾ80, under a decree of Judge Fraser, rendered in a cause to which this plaintiff, Gustavus W. Klinck, was not a party. The decree ordered a sale to satisfy the claim of Martha P. Godfrey, for dower, and directed the sheriff to put the purchaser at such sale into possession. The subsequent proceedings are stated in the opinion.

From the several orders of Judge Aldrich, the defendants, Robert Black and Martha P. Godfrey, appealed to this court.

*Messrs. Tracy & Tracy* and *Henderson & Behre,* for appellants.

*Messrs. Mitchell & Smith* and *Robert Aldrich,* contra.

October 15th, 1880. The opinion of the court was delivered by

McGOWAN, A. J. This is a contest for the possession of a plantation in Colleton county, known as "The Shrubbery." As presented here, the rights of the parties on the merits are not involved, except so far as they may be incidentally affected by possession. On January 5th, 1880, the plaintiff was in possession of the plantation under claim of title which is not now to be considered. Seeing that the plantation was advertised for sale by Robert Black, sheriff of Colleton county, under an order of Judge Fraser, at the suit of one Martha P. Godfrey, for dower, as the widow of William Godfrey, he exhibited his complaint against Robert Black, sheriff, and Martha P. Godfrey, defendants, stating his case and praying for an injunction against the proposed sale, and also for the usual restraining orders. Judge Aldrich, upon the *prima facie* case made, granted an order, which, for convenience, we will call No. 1, "requiring the defendants to show cause on the first day of the next term of the court why the said sheriff should not be enjoined from making the sale," &c., and it was further "ordered that the said Robert Black, sheriff as aforesaid, be, and he is hereby restrained from making the sale aforesaid, or if the sale has been

made prior to the service of this order upon him, he is hereby restrained from delivering title to the said premises to the purchaser at such sale, *and from placing said purchaser in possession of said premises or* in any way interfering with the plaintiff's possession of the same."

This order was granted at Barnwell court-house January 5th, 1880, and on that same day Sheriff Black, at Walterboro', against the protest of the plaintiff, offered the plantation for sale, and it was bid off by one B. P. Sanders, at the price of $4000. Sanders did not comply with the terms of sale as required in two hours, and the sheriff re-sold at his risk. At the second sale the plantation was bid off for $1971 by Martha P. Godfrey, who was entitled to the purchase money, and to whom the sheriff executed titles. At the hour of 10.30 o'clock the next morning, (January 6th) notice of the restraining order granted at Barnwell, was served on the sheriff at his office, but his deputy had already been dispatched "between daylight and sun-up" that morning to put Mrs. Godfrey in possession under the sale, and at the hour of 1 o'clock P. M. of that day, after the sheriff had notice, but before the deputy had knowledge of it, the said deputy, in the name and by the authority of the sheriff, put the plaintiff out and Mrs. Godfrey into possession of the plantation.

On the next day, (January 7th,) the plaintiff, after leave granted, filed a supplemental complaint, stating the facts as they had taken place, and Judge Aldrich made another order, No. 2. This repeats the first restraining order in these words : " That in the meantime and until the further order of the court upon the hearing herein ordered, the said defendants be, and they are hereby, restrained forthwith *from taking or keeping possession of the premises*," &c. This order was communicated to Mr. Fishburne, agent of Mrs. Godfrey, who had been put in possession, and he " declined and refused to vacate said premises."

This disregard of his order being brought to the notice of Judge Aldrich, on January 10th, he granted order No. 3, requiring Robert Black, sheriff, Martha P. Godfrey and L. N. Fishburne to show cause why they should not be attached for disobedience of the orders aforesaid. To this rule the parties

made return. They made no motion to dissolve the orders Nos. 1 and 2, but gave notice of appeal therefrom to the Supreme Court, January 13th. Black and Mrs. Godfrey, January 19th, filed answers to the complaint and supplemental complaint. Judge Aldrich heard nothing but the rule for contempt, and, finding that the returns were not sufficient, on January 26th, he made order No 4, directing that Robert Black, sheriff, should, within two days from the order, restore to the plaintiff, Klinck, possession of the Shrubbery plantation. From this order, Martha P. Godfrey appeals, and Chief Justice Willard granted an order, No. 5, suspending the order of attachment pending the appeal.

The appellant, Martha P. Godfrey, rests her appeal from the attaching order upon the ground " that Judge Aldrich erred in determining the defendant's right to the possession of the Shrubbery plantation, regularly acquired, under an order, being a judgment upon her rights, which a judge at chambers had no right to make." As we understand, this embraces two propositions: First, that the possession of the plantation was regularly acquired by the appellant under an order which is a conclusive adjudication of her rights; and, second, that a judge at chambers had no jurisdiction to determine her right to that possession.

The sworn complaint informed Judge Aldrich that the plaintiff was in quiet possession of the Shrubbery plantation under claim of right, and being satisfied with the *prima facie* showing of equity, he made an order restraining the sheriff from delivering possession to the purchaser until the rights of the parties could be determined. Notice of this order was served upon the sheriff, at the hour of 10.30 o'clock A. M., on January 6th, and from that moment he was bound to obey that restraining order. The transfer of possession at the hour of 1 o'clock P. M. that same day was in violation of that order and without authority. 2 *Daniell's Ch. Pl. & Pr.* 1683 ; *High on Injunc.*, § 352. The character of the act was not changed by the fact that when the sheriff received notice of the restraining order, his deputy had already departed on the business, and that he could not be communicated with before the hour of 1 o'clock P. M., when the

deed was done. That might excuse the sheriff from punishment as showing that his act was not willful, but could not give authority where none existed. We cannot distinguish between the sheriff and his deputy in the performance of an official act. The deputy derives his powers from the sheriff, and his act is that of the sheriff. As soon as the sheriff ceased to have authority, that moment the deputy ceases to have any, whether he knew of the notice to the sheriff or not. The ignorance of the deputy could not legalize that which was without authority.

But it is urged for the sheriff that Judge Aldrich at chambers had no authority to make an order restraining the enforcement of Judge Fraser's order to put the purchaser in possession. Upon this point it would, perhaps, be enough to suggest that that was not a matter to be judged of by the sheriff, who, as an executive officer, had nothing to do but to obey the last order, which directed him to do nothing—merely to refrain from acting. But we may add that, even if the sheriff had the right to question the legality of the order, his view of the law was more than doubtful. It may be that, under some circumstances, the court would not enjoin *a sale* of land under process, in the view that the mere *sale of land* cannot injure the rights of any one. *Wilson* v. *Hyatt, McBurney & Co.,* 4 *S. C.* 369. But it is a very different question whether the court has the right to enjoin *the delivery of possession by the officer of the law.* In ordinary sheriff's sales there is no delivery of possession, but the purchaser is left to assert, in court, his right to possession, as well as all other rights. Under the code of procedure, Section 242, sub-division 1, it was within the judicial discretion of Judge Aldrich to restrain, temporarily, the enforcement of so much of Judge Fraser's order as directed possession to be given—that was a matter beyond the sale, and might work irreparable injury to one in possession under claim of title who was not a party to the proceeding in which the order to deliver possession was made. To that extent the order of Judge Fraser was in the nature of a writ of *habere facias possessionem,* which may be restrained in equity pending litigation. *Dorn* v. *Beasley,* 6 *Rich. Eq.* 408.

We thing that the restraining order at the time the relative condition of the parties was changed by the delivery of possession, was not suspended by appeal. It was *ex parte*. No motion was made to vacate it. Even notice of appeal was not given until after the possession was changed. Besides, the order in its nature was not appealable. In no sense did it "involve the merits." It determined no rights but was purely administrative —to maintain the status pending the litigation. If its effect in this respect could be suspended by an appeal at any time, its very nature would be changed and this great preventive remedy of equity rendered perfectly nugatory. *High on Injunc.*, § 16, and authorities cited.

But if the judge had jurisdiction to make the restraining order, it is urged that he had none to make the order No. 2, (January 8th,) which was not merely a restraining order, but required the sheriff to do a positive act in *restoring* possession. The act required to be done by the sheriff was simply to undo his own void act done through his deputy in ignorance of the facts. Both orders were in the possession of the sheriff, and binding upon him—one commanding him to refrain from delivering possession, and the other commanding him, if delivered, to restore possession. In fact, the delivery which was made was merely by accident, resulting from the ignorance of the deputy sheriff. If, under these circumstances, Mrs. Godfrey, who got possession by that accident, could defeat the plain purpose of the orders to maintain the *statu quo*, it would surely disclose great inefficiency in the administration of the law. Under particular circumstances *mandatory injunctions* are allowable. In Howe v. Searing, part of the injunction adjudged at the hearing was "that the defendant should *not continue to use the name of 'Howe's Bakery'* on any sign or wagon, *and should remove a large sign with that name.*" Justice Hoffman, who pronounced the order, held that the power *to forbid the continuance of a thing* and to punish a party for continuing it, was the same thing as the power *to command its removal*, and that it was best to make the language express directly what was actually commanded. *Hoffman's Prov. Rem. of Code* 377.

The sheriff exhibited reluctance to disturb the *statu quo of two o'clock in the evening,* which had been created only an hour before by the mistake of his deputy in delivering possession. It would seem that a sense of official impartiality should make him equally reluctant to disturb the *statu quo of ten o'clock that morning,* or, that being disturbed by the mistake of his deputy, he should be prompt to correct the mistake.

This judgment is not intended to touch the merits of the case and is without prejudice. The only purpose being to restore the parties to the same condition in which they stood, as to possession, at the hour of 10.30 o'clock on the morning of January 6th, when the sheriff received notice of the first restraining order.

The judgment below is affirmed and the appeal dismissed.

McIVER, A. J., concurred.